UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RALPH SVEC,                                           CIVIL NO. 06-3234 (JNE/JSM)

       Plaintiff,

v.                                                                    REPORT AND
                                                                      RECOMMENDATION
MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.


The above matter is before the undersigned United States Magistrate Judge on plaintiff's Motion for Summary Judgment [Docket No. 5] and Defendant's Motion for Summary Judgment [Docket No. 8].  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

For the reasons discussed below, it is recommended that plaintiff's Motion for Summary Judgment [Docket No. 5] be DENIED and defendant's Motion for Summary Judgment [Docket No. 8] be GRANTED.

## I.     PROCEDURAL BACKGROUND

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., in January of 2004.  (Tr. 55-57).  Plaintiff alleges a disability, starting August 1, 1999, due to back injury, shoulder surgery on his right rotator cuff, left knee problems, a herniated testicle, and other symptoms.  (Tr. 66).

The Social Security Administration ("SSA") denied plaintiff's application initially and upon reconsideration.  (Tr. 26-28, 29-35).  Plaintiff then filed a request for a

hearing, and on December 5, 2005, a hearing was held before Administrative Law Judge ("ALJ") William G. Brown.  (Tr. 14, 199).  On December 16, 2005, the ALJ issued a decision to deny plaintiff benefits.  (Tr. 14-23).  Plaintiff requested review from the Appeals Council.  (Tr. 12).  On May 31, 2006, the Appeals Council denied his request for review.  (Tr. 6).  Denial of review by the Appeals Council made the ALJ's decision the final decision of the Commissioner in this case.  (Tr. 6).  See 42 U.S.C. § 405(g).

Plaintiff sought review of the ALJ's decision by filing a Complaint with this Court pursuant to 42 U.S.C. § 405(g).  [Docket No. 1].  The parties now appear before the Court on plaintiff's Motion for Summary Judgment [Docket No. 5] and defendant's Motion for Summary Judgment [Docket No. 8].

## II.    PROCESS FOR REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded.  "The Social Security program provides benefits to people who are aged, blind, or who suffer from a physical or mental disability."  42 U.S.C. § 1382(a); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992).  The Social Security Administration shall find a person disabled if the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 1382c(a)(3)(A).  The claimant's impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).   The impairment must last for a continuous period of at least

12 months or be expected to result in death.   42 U.S.C. § 1382c(a)(3)(A);  see also 20 C.F.R. §§ 404.1509, 416.909.

### A.     Administrative Law Judge Hearing's Five-Step Analysis

If a claimant's initial application for benefits is denied, he or she may request reconsideration of the decision.  20 C.F.R. §§ 404.909(a)(1), 416.1409(a).  A claimant who is dissatisfied with the reconsidered decision may obtain administrative review by an ALJ.  42 U.S.C. §§ 405(b)(1), 1383 (c)(1); 20 C.F.R. §§ 404.929, 416.1429, 422.201 et seq.  To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis, requiring the ALJ to make a series of factual findings regarding the claimant's work history, impairment, residual functional capacity, past work, age, education and work experience.  See 20 C.F.R. §§ 404.1520, 416.920; see also Locher, 968 F.2d at 727.  The Eighth Circuit described this five-step process in Morse v. Shalala, 16 F.3d 865, 871 (8th Cir. 1994):

> The first step asks if the claimant is currently engaged in substantial gainful employment.  If so, the claimant is not disabled.  If not, the second step inquires if the claimant has an impairment or combination of impairments that significantly limits the ability to do basic work activities.  If not, the claimant is not disabled.  If so, the third step is whether the impairments meet or equal a listed impairment; if they do, the claimant is disabled.  The fourth step asks if the claimant's impairments prevent [him] from doing past relevant work.  If the claimant can perform past relevant work, [he] is not disabled.  The fifth step involves the question of whether the claimant's impairments prevent [him] from doing other work.  If so, the claimant is disabled.

### B.     Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, he or she may request review by the Appeals Council, though review is not automatic.  20 C.F.R. §§ 404.967-404.982, 416.1467-416.1492.  The decision of the Appeals Council (or of the ALJ, if the

request for review is denied) is final and binding upon the claimant unless the matter is appealed to Federal District Court within 60 days after notice of the Appeals Council's action. 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

### C.   Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps.  The Court is required to review the administrative record as a whole and to consider:

1.  The credibility findings made by the ALJ.

2.  The plaintiff's vocational factors.

3.  The medical evidence from treating and consulting physicians.

4.  The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.  Any corroboration by third parties of plaintiff's impairments.

6.  The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth plaintiff's impairments.

Cruse v. Bowen, 867 F.2d 1183, 1885 (8th Cir. 1989) (citing Brand v. Secretary of HEW, 623 F.2d 523, 527 (8th Cir. 1980)).

The review by this Court is limited to a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)); see also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994).  "The substantial evidence test employed in reviewing

administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings."  Gavin v. Heckler, 811 F.2d 1195, 1999 (8th Cir. 1987). "'Substantial evidence on the record as a whole,' . . . requires a more scrutinizing analysis."  Id.  In reviewing the administrative decision, "'[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'"  Id. (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact.  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence.   Culbertson, 30 F.3d at 939.   The Court should not reverse the Commissioner's finding merely because evidence may exist to support the opposite conclusion. Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994); see also Woolf, 3 F.3d at 1213 (the ALJ's determination must be affirmed, even if substantial evidence would support the opposite finding).   Instead, the Court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Gavin, 811 F.2d at 1199.

The claimant bears the burden of proving his or her entitlement to disability insurance benefits under the Social Security Act.   See 20 C.F.R. §§ 404.1512(a), 416.912(a); Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir. 1991).  Once the claimant has demonstrated he or she cannot perform prior work due to a disability, the burden of proof then shifts to the Commissioner to show that the claimant can engage in some

other substantial, gainful activity.   Martonik v. Heckler, 773 F.2d 236, 238 (8th Cir. 1985).

## III.   DECISION UNDER REVIEW

### A.   The ALJ's Findings of Fact

Plaintiff, born November 4, 1947, was fifty-eight years old on the date of the ALJ's decision.  (Tr. 206).  Plaintiff completed high school and training as a U.S. Air Force jet engine mechanic, and has past relevant work experience as an employee and owner of a transmission shop.  (Tr. 67-68, 72, 208).  Plaintiff has alleged a disability due to back problems, shoulder problems, testicular hernia and knee problems.  (Tr. 20, 67, 210-211).

The ALJ concluded that plaintiff was not entitled to a period of disability or disability insurance benefits under sections 216(i) and 223 of the Social Security Act. (Tr. 23).  The ALJ stated that he made the following findings based on the entire record:

1. The claimant meets the non-disability requirements for a period of disability and disability insurance benefits set forth in section 216(i) of the Social Security Act through December 31, 2003.

2. The claimant has not engaged in substantial gainful activity since August 1, 1999, his alleged disability onset date (20 CFR § 404.1520(b)).

3. The claimant is severely impaired by degenerative joint disease of the bilateral knees, a history of degenerative disc disease of the lumbar spine, status post a laminectomy and discectomy, a history of a right rotator cuff injury status post repair, and left shoulder impingement syndrome (20 CFR § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Regulations No. 4 (20 CFR § 404.1520(d)).

5. The claimant has the residual functional capacity to perform work involving lifting 30 pounds occasionally, and 10 pounds frequently; standing and walking for up to 6 hours out of an 8 hour day; sitting for up to 6 hours out of

an 8 hour day; with only the occasional use of ropes, ladders, and scaffolds; and only occasional climbing, stooping, crouching, kneeling, and crawling.

6. The claimant is capable of performing his past relevant work as a garage supervisor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR § 404.1565).

7. The claimant has not been under a 'disability,' as defined in the Social Security Act, from August 1, 1999, through the date of this decision (20 CFR § 404.1520(f)).

(Tr. 19-23).

**B.   The ALJ's Application of the Five-Step Process**

In reaching his findings, the ALJ made the following determinations under the five-step procedure. (Tr. 17-23). At the first step, the ALJ found that plaintiff had not worked since his alleged disability onset date. (Tr. 19).

At the second step, the ALJ found that plaintiff was subject to severe impairments from degenerative joint disease of the bilateral knees, a history of degenerative disc disease of the lumbar spine, status post a laminectomy and discectomy, and history of right rotator cuff injury status post repair, and left shoulder impingement syndrome. (Tr. 19-20). At the third step, the ALJ determined that plaintiff's impairments or combination of impairments did not meet or equal any of the listings of impairments. (Tr. 20). At the fourth step, the ALJ found that plaintiff was capable of performing his past relevant work as a garage supervisor. (Tr. 23). Because the ALJ determined that plaintiff had the residual functional capacity to perform his past relevant work, plaintiff was not considered to be disabled, and the ALJ did not address the fifth step to determine whether plaintiff was able to do any other work. (Tr. 19, 23).

IV.   **ISSUES UNDER REVIEW**

On appeal, plaintiff first contended that it was error for the ALJ to end his inquiry at the fourth step of the sequential evaluation process and determine that plaintiff could return to past relevant work as a garage supervisor.  In this regard, plaintiff argued that he never held the position of garage supervisor, never performed the basic job duties or functions of a garage supervisor, and that any skills he acquired while self-employed as a transmission mechanic or owner of a transmission shop should have been addressed at step five in the analysis, where the ALJ is required to determine if he could perform other work.  See Pl. Mem. at pp. 7, 13-14.  Second, plaintiff maintained that the ALJ erred in finding that he could perform the position of garage supervisor when considering all of the limitations included in the ALJ's hypothetical to the vocational expert.  Id. at pp. 13, 15.  Finally, plaintiff claimed the ALJ erred when he ended his inquiry at the fourth step of the sequential evaluation process.  Id. at pp. 14, 16. Instead, plaintiff argues that the ALJ should have found plaintiff disabled based on his age, RFC and other vocational factors.  Id. at p. 16.[1]

In his motion for summary judgment, plaintiff asked this Court to remand the matter back to the ALJ for further proceedings consistent with proper legal principles.  In his cross-motion for summary judgment, the Commissioner asked this Court to deny

---

[1]     Plaintiff did not argue in his submission to the Court that the ALJ failed to give his subjective complaints proper weight pursuant to Polaski v. Heckler, 739 F. 2d 1320 (8th Cir. 1984).  Therefore, he has waived the right to contest the ALJ's findings with respect to this issue.  See Craig v. Apfel, 212 F.3d 433, 437 (8th Cir. 2000); see also Yeazel v. Apfel, 148 F.3d 910, 911-12 (8th Cir. 1998) (citing Roth v. G.D. Searle & Co., 27 F.3d 1303, 1307 (8th Cir. 1994)) (finding failure to raise an issue before this Court results in waiver of that argument).

plaintiff's motion for summary judgment and affirm the decision of the Commissioner denying plaintiff's claims for disability benefits.

### A.      The Medical Evidence Presented to the ALJ for His Consideration

### 1.  Medical Records

On September 25, 1992, plaintiff had an MRI of his back which showed a moderate-sized, extruded disc herniation.  (Tr. 162).  On September 30, 1992, plaintiff had surgery for an extruded central-left L4-5 disc at Fairview Southdale Hospital in Edina, Minnesota.   (Tr. 143).   Dr. Jerry Reese performed the laminectomy and discectomy and removed a free fragment disc.  (Tr. 143-144).

On August 7, 2001, plaintiff was seen at Orthopaedic Consultants, P.A. in Edina, Minnesota for a right wrist sprain.  (Tr. 158).  Plaintiff was given a short arm cast for one week. (Tr. 159).

On February 18, 2002, plaintiff was treated at Orthopaedic Consultants, P.A. in Edina, Minnesota for swelling in his right elbow following a bump on a table.  (Tr. 157). Dr. Mark D. Fischer recommended 24-hour elbow splinting and oral anti-inflammatories. (Tr. 157).

On July 1, 2002, plaintiff was treated for a twisted ankle at the Bloomington Lake Clinic for left ankle swelling and pain.  (Tr. 186, 196).  X-rays were ordered, and plaintiff was given a gel cast to wear for two weeks.  (Tr. 186).  Plaintiff was seen again on July 17, 2002, and his ankle was quite a bit better.  (Tr. 196).  He was walking without a brace, and while there was slight puffiness noted, there was no obvious tenderness to palpation, and his ankle sprain was improving.  (Tr. 196).

On July 16, 2002, plaintiff was seen by Dr. Harold J. Hoffman at Urologic Physicians, PA in Edina, Minnesota, for complaints of swelling in his right testicle.  (Tr. 139).  Plaintiff underwent a scrotal ultrasound on July 23, 2002, and a cyst was located above the right testicle.  (Tr. 142).

On October 29, 2002, plaintiff was seen by Dr. Thomas J. Raih at Orthopaedic Consultants, P.A., in Edina, Minnesota, with complaints of right shoulder pain.  (Tr. 156).  Dr. Raih found tenderness in plaintiff's right shoulder and positive impingement signs, and ordered an MRI of the shoulder.  (Tr. 156).  On October 30, 2002, plaintiff had an MRI examination of his right shoulder, which found significant degenerative changes and a partial rotator cuff tear.  (Tr. 147-161).  Plaintiff had continuing symptoms, complaining of pain at night and pain with overhead activities, and was reevaluated after the MRI by Dr. Raih.  (Tr. 155).  On November 15, 2002, plaintiff had surgery on his right shoulder for impingement with partial tear rotator cuff, degenerative acromioclavicular joint and large subacromial spur.  (Tr. 147-148).  On November 25, 2002, Dr. Raih noted that plaintiff was "coming along well," and that the right shoulder showed good alignment with adequate decompression.  (Tr. 154).  On December 17, 2002, plaintiff was reevaluated by Dr. Raih, who noted that plaintiff was progressing well and ordered physical therapy.  (Tr. 153).  Plaintiff began physical therapy on January 2, 2003, with Richard Lundgren, PT at the Institute of Athletic Medicine.  (Tr. 149).  On January 20, 2003, Lundgren stated that plaintiff perceived significant improvement since the initial visit and reported improvement in all functional areas.  (Tr. 149).  Lundgren noted that plaintiff had progressed nicely and responded well to the treatment.  (Tr. 149).  On January 21, 2003, plaintiff was seen for evaluation by Dr. Raih, who

determined plaintiff to be significantly improved, with good internal and external rotation of his shoulder and neurologic status intact.  (Tr. 153).   Plaintiff indicated he had significantly improved, his pain was 70% to 80% improved, and he denied radicular symptoms.  (Tr. 153).  On March 11, 2003, Dr. Raih noted that plaintiff was doing quite well, and had tried to shovel snow over the weekend.  (Tr. 152).  Dr. Raih indicated that Plaintiff had good strength on external rotation and abduction, and could get his arm behind his back to reach the L5 area.  (Tr. 152).  On June 10, 2003, plaintiff was again evaluated by Dr. Raih, who indicated that plaintiff was coming along well, and had occasional symptoms with occasional activities.  (Tr. 152).  Plaintiff reported to Dr. Raih that he had gone fishing, and wanted to go hunting in the fall.  (Tr. 152).  Dr. Raih observed that plaintiff had near full range of motion, good stability, and his rotator cuff appeared to be intact.  (Tr. 152).

In February of 2004, state agency physician Dr. Mir Ahmad Sarshar reviewed plaintiff's medical records.  (Tr. 166-167).  Dr. Sarshar's assessment of the records states that there is no indication that plaintiff had any evaluation of his back after the 1992 back surgery, and that he worked until 1999 with no apparent difficulties.  (Tr. 167).   Further, Dr. Sarshar noted that plaintiff had excellent results from his right shoulder surgery and did not seek medical attention after June 2003, and Dr. Sarshar concluded that the rotator cuff problem had resolved and was non-severe.  (Tr. 167).  Finally, Dr. Sarshar determined that there was insufficient data on plaintiff's knees, and that plaintiff would need an updated evaluation before any opinion could be rendered on his impairment.  (Tr. 167).

In March 2004, plaintiff saw Dr. Ronald Bateman, D.O., for a consultative evaluation.  (Tr. 169-171).  Upon examination of plaintiff and review of his medical records, Dr. Bateman determined that plaintiff's right shoulder was stable, with full range of motion and good grip and grasp.  (Tr. 169).  He also determined that plaintiff had some degenerative changes in his knees and that his knees were stable, and that he had some degenerative disc disease in his back after his 1992 laminectomy.  (Tr. 170). Dr. Bateman determined that plaintiff could work during an 8-hour day, sitting, standing and walking with no need to change position more than usual, and that his lifting should be limited to 40 pounds maximum or occasional 30 pounds.  (Tr. 170).  Upon review of plaintiff's knee x-rays and a physical examination, Dr. Bateman also concluded that plaintiff's knees were stable with no tenderness, swelling or effusion, and had full range of motion, and therefore caused no additional restrictions on plaintiff's work.  (Tr. 171).

In April 2004, Dr. Alan Suddard completed a residual functional capacity assessment of plaintiff's medical records.  (Tr. 172-179).  Dr. Suddard determined that plaintiff was limited to occasionally lifting 40 pounds, could frequently lift 30 pounds, could stand or walk for six hours in an eight-hour workday, could sit for six hours in an eight-hour workday, and was unlimited in his capacity to push and pull except for the lifting and carrying limits.  (Tr. 173).  Dr. Suddard based his determination on the facts that plaintiff required no medical attention after his rotator cuff repair surgery, he had worked for seven years after his laminectomy and discectomy surgery, and he had no swelling or effusion and full range of motion in his knees.  (Tr. 174).  Dr. Suddard opined that plaintiff was limited to frequent balancing, and occasional stooping, kneeling, crouching, crawling, and climbing of ladders, ropes and scaffolds.  (Tr. 174).  Dr.

Suddard found no limitations in plaintiff's manipulative, visual, communicative, or environmental capabilities. (Tr. 175-176). Dr. Suddard concluded that plaintiff's symptoms were consistent with his diagnosis, and that there were no conclusions of the treating and examining sources that differed significantly from his findings. (Tr. 177-178).

On May 20, 2004, plaintiff was seen by Dr. Raih. (Tr. 181). Dr. Raih noted that plaintiff's rotator cuff repair was doing quite well except for some symptoms with repetitive overhead lifting. (Tr. 181). At this appointment, plaintiff complained of left shoulder symptoms when trying to do overhead activities, and of left knee symptoms including popping and pain at night. (Tr. 181). Dr. Raih noted positive impingement signs in plaintiff's left shoulder, with some tenderness over the anterior acromion, and full range of motion and full rotator cuff strength. (Tr. 181). There were mild anterior patellar symptoms in plaintiff's knees, and mild medial joint line symptoms with good stability. (Tr. 181). Plaintiff's x-rays showed a Type II acromion in his left shoulder, but no significant sclerosis, or degenerative changes. (Tr. 181). The x-rays of plaintiff's knees revealed some mild patellofemoral changes with slight lateral positioning of the patella, with some mile early changes of the medial compartment. (Tr. 181). Dr. Raih's impression was that plaintiff had impingement syndrome in his left shoulder, and mild osteoarthritis of the knees with patellofemoral arthrosis. (Tr. 181). Plaintiff's left shoulder was injected with Kenolog and Xylocaine, which provided some relief, and plaintiff was prescribed exercises and anti-inflammatories for his knees. (Tr. 181).

On July 13, 2004, plaintiff was evaluated by Dr. Raih for complaints of pain and discomfort of his left wrist for four to five months, pain over his medial left ankle for a

few months, and difficulty on stairs.  (Tr. 180).  Regarding plaintiff's ankles, Dr. Raih noted that plaintiff had mild tenderness medially and good stability, with no calf tenderness.  (Tr. 180).  Regarding plaintiff's wrist, Dr. Raih found no measurable swelling.  (Tr. 180).  Dr. Raih's impression was that plaintiff had mild arthritis in his left wrist and internal derangement in his left ankle.  (Tr. 180).  He recommended a wrist splint and anti-inflammatories.  (Tr. 180).

On May 17, 2005, plaintiff was seen at the Bloomington Lake Clinic for complaints of pain in his lower leg about three inches above his ankle.  (Tr. 185). Plaintiff had slipped and fallen on May 14, 2005, and the clinic notes state that tenderness existed distally on the fibula, that x-rays showed no fracture, and plaintiff was diagnosed with soft tissue injury of his right distal fibula.  (Tr. 185).  On June 1, 2005, plaintiff was seen again for increased leg pain.  (Tr. 185).  Plaintiff had twisted his ankle a couple of times since his visit on May 14, 2005.  (Tr. 185).  X-rays showed that plaintiff had a non-displaced fracture of his fibula, and he was given a walker.  (Tr. 185). On July 6, 2005, plaintiff was seen for a follow-up examination on his fractured right fibula; plaintiff had no further pain and his leg was non-tender to palpation.  (Tr. 184). Usage of his walker was discontinued.  (Tr. 184).

On November 28, 2005, plaintiff sought treatment for slamming his right middle finger in a trunk door, and was diagnosed with a nondisplaced fracture and given a splint.  (Tr. 184).

### 2.  Plaintiff's Testimony

On February 4, 2004, plaintiff completed a Disability Report in connection with his application for benefits.  (Tr. 66-73).  In response to the question asking him to

describe his job and what he did all day, plaintiff stated that he pulled transmissions out of cars, overhauled them and reinstalled them into the cars, did book work, answered the telephone, set up appointments for customers, handled customer relations, trained employees, and hired and fired employees.  (Tr. 68).

On December 5, 2005, plaintiff appeared and testified at the hearing held before the ALJ.  (Tr. 199).  Plaintiff testified as follows: he is fifty-eight years old.  He owned his own transmission shop business, which he sold in 1999.  (Tr. 208).  He sold the shop because he could no longer perform the work as it bothered him to kneel down to operate the controls of the hoist, and he could not do the required lifting.  (Tr. 208-209).  During a routine day at the shop, plaintiff would open at 7:30 a.m. and start moving vehicles around and greeting customers.  (Tr. 209).  Around 8:00 a.m., customers would arrive and drop off their cars, and some of them would wait for a fluid change.  (Tr. 209).  Plaintiff would perform the fluid change if his employees did not show up at 8:00 a.m.  (Tr. 209).  Once he got everyone going, plaintiff would overhaul transmissions and pull them out, and help the employees.  (Tr. 209).  Plaintiff had his own work bench where he could rebuild the transmissions.  (Tr. 209).  As part of his work, he used various tools, including wrenches and torches.  (Tr. 220).

Plaintiff testified that as owner of the transmission shop, his duties also included greeting and dealing with customers, ordering parts and putting parts away, and supervising people.  (Tr. 223, 226, 229).

At the time of the hearing, plaintiff did not think he could work full time on transmissions, which was the only kind of work he knew.  (Tr. 209-210).  Plaintiff also stated that he had not been involved with cars at all since 1999, other than to

occasionally help his son change a tire or telling his son what to do.  (Tr. 213).  Plaintiff

has not been looking for work since 1999; rather, he has relied on income from his

wife's work and money saved from inheritance.  (Tr. 210).

### 3.  VE's Testimony at Hearing

Vocational expert L. David Russell (the "VE") also testified at the hearing on

December 5, 2005.  The ALJ gave the VE the following hypothetical:

> Q.  [I]f you could assume an individual with the claimant's age, education,
> and work experience, is impaired by disorders of the spine, history of
> rotator cuff injury and repair.  Degenerative joint disease of the knees and
> arthritis.  Is able to lift 30 pounds occasionally, 10 pounds frequently.  Can
> stand six hours out of an eight-hour day.  Could only occasionally climb
> ropes, ladders, or scaffolds.  Could only occasionally stoop, crouch, kneel,
> or crawl.  Could such an individual perform the Claimant's past relevant
> work?
>
> A.   Probably not the transmission mechanic.   Probably the garage
> supervisor.

(Tr. 231).

The VE testified that plaintiff had the primary transferable skills of the garage

supervisor, which are diagnosing, estimating, inspecting, and driving repaired vehicles,

scheduling customers and workers, keeping inventory of parts, equipment and tools,

ordering replacements, training, and keeping records.  (Tr. 231-232).  When the ALJ

added the limitation that the hypothetical individual could no more than occasionally

engage in overheard work with either upper extremity, the VE stated that the

supervisory work would not be ruled out by that limitation.  (Tr. 232).  The VE also

opined that plaintiff had the transferable skills to work in assembly positions, including

bicycle assembly and oil seal assembly, using hand and power tools and reading plans

or schematics.  (Tr. 232).

## B.    The RFC Determination

A claimant's RFC is what he or she can do despite his or her limitations.   20 C.F.R. § 404.1545(a)(1).   The ALJ must determine a claimant's RFC by considering the combination of the claimant's mental and physical impairments.   See Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).   It is the claimant's burden, not the Commissioner's, to prove the RFC.   Id. at 1218 (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).   In determining a claimant's RFC, the ALJ must consider all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his or her limitations.   Id.

The ALJ "bears the primary responsibility for assessing a claimant's [RFC] based on all relevant evidence."   Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000). Nonetheless, a claimant's RFC is a medical question, and the RFC determination must be supported by "medical evidence that addresses claimant's 'ability to function in the workplace.'"   Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003) (quoting Nevland v. Apfel, 223 F.3d 853, 858 (8th Cir. 2000)).   The ALJ is not limited to consideration of medical evidence, "but is required to consider at least some supporting evidence from a professional."   Baldwin, 439 F.3d at 556 (citing 20 C.F.R. § 404.1545(c)).   If necessary, the ALJ should solicit opinions from claimant's treating physicians, or seek consultative examinations to help assess claimant's RFC.   Nevland, 204 F.3d at 858.

From a physical standpoint, the ALJ determined that plaintiff was able to lift 30 pounds occasionally and 10 pounds frequently, could stand and walk for up to 6 hours out of an 8 hour day, only occasionally use of ropes, ladders, and scaffolds, and only occasionally climb, stoop, crouch, kneel, and crawl. (Tr. 20).   Plaintiff did not challenge

this portion of the RFC.  Pl. Mem. at p. 12.  Rather, plaintiff disputed the ALJ's finding

that he could perform past relevant work, and argued that had the ALJ instead reached

step five of the of the five-step sequential evaluation process, he would have been

required to conclude that plaintiff was disabled.

### 1.  Past Relevant Work

Plaintiff first challenged the ALJ's determination that plaintiff could return to past

relevant work as a garage supervisor because he had never performed this job or the

basic functions or duties of a garage supervisor.  See Pl. Mem. pp. 7, 13-14.

The Dictionary of Occupational Titles describes the position of garage supervisor

in 620.131-014, and states, in pertinent part:

> Supervises and coordinates activities of [automobile mechanics] engaged
> in repairing, adjusting, servicing, and storing motor vehicles in industrial or
> commercial establishment: Analyzes defective equipment to determine
> cause of trouble. Inspects and drives repaired vehicles to verify repairs.
> Trains workers in and demonstrates repair and maintenance of vehicles,
> using handtools, welding, and grinding equipment. Evaluates performance
> of workers. Keeps inventory of repair parts and equipment and requisitions
> replacement stock. Prepares repair reports and vehicle requests.
> Schedules transporting of passengers or materials to service or storage
> areas. May supervise workers engaged in inspection and repair of
> miscellaneous equipment, such as cement mixers and electric trucks.
> Performs other duties as described under SUPERVISOR (any industry)
> Master Title.
>
> STRENGTH: Light Work - Exerting up to 20 pounds of force occasionally
> (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to
> 10 pounds of force frequently.

Further, the description states:

> Climbing: Not Present - Activity or condition does not exist
> Balancing: Not Present - Activity or condition does not exist
> Stooping: Occasionally - Exists up to 1/3 of the time
> Kneeling: Occasionally - Exists up to 1/3 of the time
> Crouching: Occasionally - Exists up to 1/3 of the time
> Crawling: Not Present - Activity or condition does not exist

Reaching: Frequently - Exists from 1/3 to 2/3 of the time

While it is true that plaintiff never held the position of garage supervisor in the past, this Court finds that based on the record as a whole in this case, plaintiff's past relevant work as an owner of a transmission shop and transmission mechanic included all of the skills and functions required of a garage supervisor.  Specifically, the evidence in this case established that plaintiff opened the shop, moved vehicles around, greeted customers, scheduled appointments for customers, engaged in customer relations, ordered parts and put them away, trained and supervised employees, hired and fired employees, engaged in the removal, repair and installation of transmissions in cars, and used hand tools and torches.  (Tr. 68, 209, 220-223, 226, 228-229).  Further, the VE testified that plaintiff had the primary transferable skills of a garage supervisor, including diagnosing, estimating, inspecting, driving repaired vehicles, scheduling customers and workers, keeping inventory of parts and ordering replacements, and keeping records. (Tr. 231-232).

Additionally, to be considered past relevant work, a job must have been done within the previous 15 years, done long enough to learn to do it, and have been substantial gainful activity.  Vincent v. Apfel, 264 F.3d 767, 769 (8th Cir. 2001); see also Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998); 20 C.F.R. § 404.1565(b)(1).  The record shows that plaintiff sold his transmission shop in 1999, clearly indicating that he had worked at the job within the past 15 years.  (Tr. 208).  To constitute substantial gainful activity, the work activity must be both substantial and gainful. 20 C.F.R. § 416.972.  "Substantial work activity is work activity that involves doing significant physical or mental activities," even if done on a part-time basis.  20 C.F.R. § 416.972(a).

"Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972(b).  See also Comstock v. Chater, 91 F.3d 1143, 1145 (8th Cir. 1996).  Plaintiff owned and ran the transmission shop full-time for a profit.  (Tr. 224).

For all of these reasons, this Court finds that plaintiff's skills and work experience as an owner of a transmission shop included the functions of a garage supervisor, and that substantial evidence in the record supports the finding that plaintiff had performed past relevant work as a garage supervisor.

## 2. Residual Functioning Capacity to Perform Past Relevant Work

Plaintiff next claimed that the ALJ erred in finding that plaintiff could perform the position of garage supervisor when considering all of the limitations included in the ALJ's hypothetical to the vocational expert.  Pl. Mem. at pp. 13, 15.  Specifically, plaintiff stated that he did not dispute the ALJ's finding that he is limited to "lifting 30 pounds occasionally, and 10 pounds frequently; standing and walking for up to 6 hours out of an 8 hour day; sitting for up to 6 hours out of an 8 hour day; with only the occasional use of ropes, ladders, and scaffolds; and only occasional climbing, stooping, crouching, kneeling, and crawling.  Tr. 20."  Pl. Mem. at p. 12.  However, it was plaintiff's position that the ALJ's inclusion of "occasional overhead lifting" in his hypothetical to the VE was inconsistent with the DOT's requirement that a garage supervisor must be able to reach frequently.  Id. at p. 15.  According to plaintiff, because the ALJ included occasional overhead reaching in his hypothetical to the VE, and the applicable DOT for garage supervisor requires the ability to perform frequent reaching, the VE's opinion and the

ALJ's determination that plaintiff could perform the job of garage supervisor was in error. Id.

As a preliminary matter, this Court observes that DOT 620.131-014 does not specify whether "reaching" is overhead or otherwise.   Nevertheless, while the VE testified that a hypothetical individual with plaintiff's RFC, who also could do no more than occasionally engage in overheard work with either upper extremity, could perform the garage supervisor position, (Tr. 232), the fact is that after consideration of all of the evidence the ALJ did not add that limitation to his final RFC determination.   (Tr. 15). Instead, based upon the medical record, plaintiff's daily activities, medications, work history and the uncontradicted opinions regarding plaintiff's functional abilities of consulting physician Dr. Bateman and state agency physician Dr. Suddard, the ALJ concluded that plaintiff's RFC should not include any restrictions on reaching or overhead lifting.   (Tr. 20-23).   Therefore, based on the  RFC determined by the ALJ, which plaintiff does not dispute, this Court finds that the ALJ did not err when he found that based on that RFC, plaintiff could perform the position of garage supervisor.

### 3.  ALJ's Finding of No Disability at the Fourth Step

"The burden is on the claimant to demonstrate that he or she is unable to do past relevant work. Only when the claimant establishes the inability to do past relevant work does the burden of proof shift to the Commissioner. The Commissioner must then prove, first that the claimant retains the RFC to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004) (citing Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000); see also Moad v. Massanari, 260

F.3d 887, 891 (8th Cir. 2001) (concluding that a claimant is not disabled if it is found that he or she can perform the functions of a past relevant job); 20 C.F.R. § 404.1560(b)(3) ("If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy.").

Here, the ALJ properly concluded that plaintiff was capable of performing his past relevant work as a garage supervisor.   Therefore, the ALJ properly determined that plaintiff was not disabled.  "An ALJ may determine that a claimant is not disabled when he or she can still perform the actual duties of a past relevant job." Eichelberger, 390 F.3d at 591 (citing Stephens v. Shalala, 50 F.3d 538, 542 (8th Cir. 1995)).  Further, having determined that plaintiff was capable of performing his past relevant work at the fourth step of the sequential evaluation, the ALJ was not required to engage in step five of the analysis, i.e. whether plaintiff has the RFC to perform a significant number of jobs existing in the national economy.  Consequently, plaintiff's argument that he should be found disabled at step five using Medical Vocational Guideline 202.14,[2] is moot.

---

[2]      Plaintiff  argues  that  Medical-Vocational  Guideline  202.14  requires  a determination that he is disabled because he is an individual of advanced age (over 55) who is a high school graduate with no transferable skills.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2 §202.14.  However, the Medical-Vocational Guidelines are only utilized in the fifth step of the sequential analysis to determine whether a claimant can perform other jobs in the national economy.  See Walker v. Shalala, 993 F.2d 630, 632 (8th Cir. 1993) ("[t]he [medical-vocational] guidelines are potentially applicable, however, only at the stage of the analysis at which claimant has satisfied his burden of demonstrating that his impairment prevents his performance of his past relevant work and the burden then shifts to the Secretary to show that the claimant retains the residual functional capacity to perform other work.") (citations omitted).  Because the ALJ properly terminated his analysis at the fourth step, he was not required to consider the applicability of Medical-Vocational Guideline 202.14.

**V.      RECOMMENDATION**

For the reasons set forth above, this Court finds that the decision by the ALJ to deny plaintiff disability benefits is supported by substantial evidence on the record as a whole.  THEREFORE, IT IS RECOMMENDED THAT:

1.      Plaintiff's Motion for Summary Judgment [Docket No. 5] be DENIED.

2.      Defendant's Motion for Summary Judgment [Docket No. 8] be GRANTED.

Dated:      August 16, 2007

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **September 4, 2007** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.